IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES WAYNE FULLMER, ) | |
| ) | |
| Plaintiff, ) | Case No. CV05-441-S-EJL |
| ) | |
| vs. ) | **MEMORANDUM ORDER** |
| ) | |
| STATE OF IDAHO, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Pending before the Court are the following motions: (1) Defendants' Motion to Clarify and for Initial Review (Docket No. 25); (2) Defendants' Motions to Dismiss (Docket No. 32, 33); (3) Plaintiff's Motion for Default Judgment (Docket No. 39); (4) Plaintiff's Motion to Strike (Docket No. 42); (5) Defendants' Motion for Joinder (Docket No. 57); and (6) Plaintiff's Motion for Sanctions (Docket No. 58).  Having reviewed the pending motions and the record before it, the Court has determined that oral argument on the motions would not significantly aid in resolving them.  Based on the Court's review of the record, it has determined that Plaintiff's Complaint is subject to dismissal for failure to exhaust the prison grievance system.  Therefore, the other pending motions are moot.

**ORDER  1**

**FACTUAL BACKGROUND**

Plaintiff is an inmate in the custody of the IDOC. He was given leave to file an Amended Complaint, after the initial Complaint was found to be legally deficient. Although Plaintiff's claims in the Amended Complaint are still unclear, it appears that he is challenging the medical care he received at two IDOC facilities. Plaintiff alleges that he made several medical requests to ICC staff during March of 2005 regarding his alleged hypertension, psychological stress, asthma, mental health problems, and "suicidal and intrusive thoughts," *Docket No. 12, p. 4*. He also alleges that Defendants failed to provide him with correct blood pressure medication while at ICC. *Id*. Additionally, Plaintiff claims that he "passed out" in his cell on July 18, 2005, and Correctional Officers Tucker, Norman, Durant, and Fogg "simply walked away." *Id*., p 4 – 5. He claims that he sustained serious injuries as a result of the fall.

The day after the fall, Plaintiff underwent surgery at St. Alphonsus Regional Medical Center to repair a broken leg and hip. *Docket No. 12, p. 5.* Plaintiff claims that his hip and leg fractures were caused by the failure to prescribe the correct blood pressure medication. *Id*., p. 6. He asserts that Defendants were deliberately indifferent to his serious medical needs in failing to prescribe the correct blood pressure medication, in failing to promptly transport him for surgery, and in failing to provide adequate pain medication after his fall. *Id*., p. 6 – 7.

Plaintiff also filed a pleading described as an amendment to his Complaint which includes the allegations that Defendants are violating his rights under the ADA and

**ORDER  2**

Rehabilitation Act.  *Docket No. 24*.  He claims that violations of the ADA continue to cause "daily pain, suffering and dehabilitation."  *Id., p. 3.*

Defendants claim that Plaintiff failed to follow the IDOC grievance procedure for his prison condition claims.  *Affidavit of Jill Whittington* (*Whittington Aff.*), ¶¶ 3 – 4.  The Offender Grievance Process requires inmates to first seek an informal resolution of their claims by filing an Offender Concern Form.  *Whittington Aff.*, ¶ 5.  The Offender Concern Form must be addressed to the staff person most directly involved with the inmate's alleged concern. The staff person must then respond to the inmate's Concern Form within seven (7) business days of its receipt. *Id.*, ¶ 5.

If the inmate's concern is not resolved informally through the filing of the Concern Form, the inmate must attach the form to a Grievance Form and file the Grievance Form with unit staff within fifteen (15) days of the incident underlying the inmate's complaint.  *Whittington Aff.*, ¶ 6.  Inmates are required to include specific information in the Grievance Form, and once the form is received by unit staff, the grievance is entered into an electronic database known as "Access."  *Id.*, ¶¶ 7, 12.  The database allows the ISCI staff to search for inmate grievances using the inmates' name, IDOC number, grievance number, and date.  *Id.*, ¶ 12.  The staff person to whom the grievance is directed must respond and must return the grievance to the Grievance Coordinator who forwards the grievance and response to a reviewing authority – typically a Deputy Warden.  The Grievance Coordinator then returns the grievance to the inmate along with the responses from the staff member and reviewing authority.  *Id.*, ¶ 7.

**ORDER  3**

If the inmate's complaint relates to medical care or treatment, the grievance is given to medical staff, and the Health Services Administrator reviews the complaint. *Id*., ¶ 8. The inmate must then file an appeal if he is not satisfied with the response to his grievance. Once the appeal is entered into a database, the Grievance Coordinator forwards the appeal to the "appellate authority," who is typically the Regional Manager or Vice President of the Idaho Department of Correction's medical contractor. *Id.*, ¶ 9-10. The appellate authority must respond to and return the grievance to the grievance coordinator, who then forwards the grievance to the inmate. *Id*. The appellate authority has the discretion to forward the grievance to the Director of the Idaho Department of Correction or to another division administrator for resolution of those grievances that are beyond the appellate authority's control. *Id*., ¶ 10.

Defendants assert that Plaintiff failed to submit a Grievance relating to any allegations outlined in his Prisoner Civil Rights Complaint, his Amended Complaint, his Verified Amended Complaint, or his Amended ADA Complaint. Defendants' grievance record contains one Grievance Form Plaintiff submitted in regard to medical bills he continued to receive for a previous surgery. *Id*., ¶ 13. It does not appear that Plaintiff submitted a grievance form regarding medical care and treatment between July 1, 2005 and the present. Defendants argue that the failure to complete and submit Grievance Forms relating to his medical care prior to filing his Complaint, warrants the dismissal of his lawsuit.

**ORDER  4**

In response to Defendants' Motion to Dismiss, Plaintiff submitted grievance forms dating back to October of 2000 and January of 2001, relating to loss of personal property. *Docket No. 40-2*, p. 8-20.  No grievance forms relating to the Eighth Amendment medical or ADA claims were submitted.  Plaintiff's Motion to Strike the Motion to Dismiss asserts that Defendants' affirmative defense of non-exhaustion does not apply to imminent danger situations, and he was denied the "Standards of Law."  Presumably, this latter argument relates to the lack of research materials available to inmates in the prison resource centers.  Plaintiff also includes "Retaliatory Actions" as a basis for denying Defendants' Motion to Dismiss.  *See Docket No. 42*, p. 2.  He claims that "hostility to rights could be considered a [retaliatory] move."  *Id.*, p. 8.  Plaintiff also claims that his transfer from ICC, the private prison facility, to an IDOC facility makes the exhaustion requirement moot.  *Id.*, p. 4.

## STANDARDS OF LAW

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in

**ORDER  5**

federal court." *Woodford v. Ngo*, 126 S. Ct. 2378, 2384 (2006).[1]  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. 910, 918-19 (2007).  In *Jones v. Bock,* the Supreme Court reiterated that the policy underlying the exhaustion requirement is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 914.

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 126 S. Ct. at 2393.  In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 2383-84.  The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 2384.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).  In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20.

---

[1] *Cf. Jones v. Stewart*, 457 F.Supp. 2d 1131, 1136-37 (D. Nev. 2006) (if, *at every level of administrative review available*, prison officials review the merits of a grievance that does not meet the applicable procedural rules, such as timeliness, the prisoner has satisfied the administrative exhaustion requirement of *Woodford v. Ngo*).

**ORDER  6**

Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

Additionally, the Court has determined that an inmate's ADA claims are also subject to exhaustion of the grievance system. *See* 42 U.S.C. 1997e(a) (providing that no action relating to prison conditions "or any other Federal law" shall be brought until the inmate has exhausted the inmate grievance system); *Porter v. Nussle*, 534 U.S. 516, 532 (2002)(holding that the PLRA's exhaustion requirement applies to all inmate suits about prison life); *see also Fitzgerald v. Schwarzenneger*, 2006 WL 2949270 *2 (E.D. Cal.)(holding that the inmates' claims under the ADA and RA must be exhausted prior to filing a complaint containing these claims).

## DISCUSSION

The IDOC has a relatively simple grievance procedure. The inmate first submits an inmate concern form, then a grievance, and then an appeal of the grievance. Here, there is no evidence that Plaintiff ever submitted a grievance about the allegedly inappropriate medical care and alleged ADA violations. He asserts several arguments to excuse his failure to exhaust administrative remedies, none of which has merit.

Plaintiff claims that there is an imminent danger exception to the exhaustion requirement, but he has alleged no facts in response to the motion to dismiss which amount to an imminent danger to his health or safety. *Amended Complaint*, Docket No. 12, p. 4-6. Plaintiff asserts medical issues arising from a broken hip during 2005 and the Defendants alleged non-compliance with the ADA accessibility standards, but he does not

**ORDER  7**

state sufficient claims, describing imminent danger to his health and safety. *See Docket No. 24, p. 3*. Plaintiff also claims that he was denied the "standards of law" relating to his claims, but pro se inmates are not expected to undertake their own legal research. It appears that Plaintiff has adequately alleged a claim under the ADA, but the current law on exhaustion dictates that he must first attempt to exhaust the ADA claims prior to including them in his lawsuit.

Plaintiff further argues that his transfer from ICC to ISCI made it impossible for him to complete the grievance procedure for claims arising while he was incarcerated there. Defendants argue that the grievance system accommodates transfers among the IDOC institutions. They claim that Plaintiff could have exhausted the grievance system for all claims arising out of events at ICC. The record contains nothing showing that Plaintiff even attempted to grieve the conditions at ICC, and therefore, it does not appear that he tried to use the grievance system at either ICC or ISCI.

The Court notes that Plaintiff has submitted nothing to date showing that he is unable to understand how to use the prison grievance system, and he is obviously capable of filing and maintaining a civil rights action. Therefore, prison officials and medical providers should be given the opportunity to resolve Plaintiff's alleged civil rights and ADA claims prior to the time he files an action against them in federal court.

**ORDER 8**

## CONCLUSION

The Court concludes that Plaintiff did not exhaust his administrative remedies prior to filing his Complaint. The prison has a fairly simple, long-standing grievance process that Plaintiff failed to use. Plaintiff has not brought forward sufficient evidence showing that he either substantially complied with the grievance procedure or that adequate excuse existed for not using the system. The Supreme Court has been very clear that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 127 S. Ct. at 918-19. As a result, the Court shall dismiss Plaintiff's claims without prejudice.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Clarify and for Initial Review (Docket No. 25) is GRANTED to the extent it requested a review and dismissal of Plaintiff's Complaint without prejudice.

IT IS FURTHER HEREBY ORDERED that Defendants' Motions to Dismiss (Docket Nos. 32, 33) are GRANTED based on Plaintiff's failure to exhaust the prison grievance system as to all of his claims.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Default Judgment (Docket No. 39) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Strike (Docket No. 42) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Joinder (Docket No. 57) is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Sanctions (Docket No. 58) is DENIED.

DATED: **September 6, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  10**